628 A.2d 904

**COMMONWEALTH of Pennsylvania**

v.

**Carl RUNION, Appellant.**

Superior Court of Pennsylvania.

Submitted June 24, 1993.

Filed July 22, 1993.

218

---

Lori J. Ulrich, Harrisburg, for appellant.

Richard E. Guida, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before ROWLEY, President Judge, and TAMILIA and POPOVICH, JJ.

TAMILIA, Judge.

Appellant, Carl Runion, takes this appeal from the judgment of sentence imposed on November 19, 1992. Appellant was found guilty in a jury trial of simple assault,[1] graded as a misdemeanor of the third degree as resulting from a scuffle entered into by mutual consent.[2] Subsequently, appellant was sentenced to a term of three (3) to twelve (12) months in the Dauphin County Prison, fined $300 and ordered to pay restitution in the amount of $7,261.07 to the Dauphin County Public Assistance Program, which had paid the medical bills of the victim (N.T., 11/19/92, p. 8).

On appeal, appellant first argues the Order of restitution was improper in that the Dauphin County Public Assistance Program was not the victim of the assault.

The Crimes Code provides for restitution for injuries to person or property, and states, in pertinent part:

(a) **General rule.**—Upon conviction for any crime ... wherein the victim suffered personal injury directly resulting from the crime, the offender may be sentenced to make restitution in addition to the punishment prescribed therefor.

. . . . .

(e) **Restitution payments and records.**—Restitution, when ordered by a judge, shall be made by the offender to the probation section of the county in which he was convicted according to the order of the court or, when ordered by a district justice, shall be made to the district justice. The probation section and the district justice shall maintain records of the restitution order and its satisfaction and shall forward to the victim the property or payments made pursuant to the restitution order.

1. 18 Pa.C.S. § 2701(a)(1).
2. *Id.,* § 2701(b).

18 Pa.C.S. § 1106. The statute further defines victim as: "Any person, except an offender, who suffered injuries to his person or property as a direct result of the crime." *Id.*, § 1106(h).

This Court must determine, then, whether the Dauphin County Public Assistance Program is a victim of appellant's crime, as that term is used in section 1106 of the Crimes Code. We conclude it is.

It is the law of this Commonwealth that an Act of Assembly which imposes penal sanctions for violations of its provisions must be strictly construed. 1 Pa.C.S. § 1928(b)(1); *Commonwealth v. Hill*, 481 Pa. 37, 391 A.2d 1303 (1978). "However, strict construction does not require that the words of a criminal statute be given their narrowest meaning or that the legislature's evident intent be disregarded." *Commonwealth v. Gordon*, 511 Pa. 481, 487, 515 A.2d 558, 561 (1986). In attempting to ascertain the meaning of a statute, we are required to consider the intent of the legislature and are permitted to examine the practical consequences of a particular interpretation. *Commonwealth v. Stewart*, 375 Pa.Super. 585, 544 A.2d 1384 (1988). We are to presume the legislature did not intend a result that is absurd or unreasonable. *Commonwealth v. Martorano*, 387 Pa.Super. 151, 563 A.2d 1229 (1989).

In *Commonwealth v. Galloway*, 302 Pa.Super. 145, 448 A.2d 568 (1982), this Court vacated an Order of restitution directing the defendant to make restitution to the insurance company whose policy covered the dwelling defendant had burned, finding that the insurance company was not the victim within the meaning of 18 Pa.C.S. § 1106(h). "[P]ayment under an insurance contract is not a 'loss,' but merely a contractual obligation. Only the innocent legal owners of the home destroyed by the arson are entitled to restitution on the arson conviction as the victims." *Id.* at 162, 448 A.2d at 577 (footnote omitted). *See also Commonwealth v. Mathis*, 317 Pa.Super. 362, 464 A.2d 362 (1983).

However, in *Commonwealth v. Mourar,* 349 Pa.Super. 583, 504 A.2d 197 (1986), *vacated on other grounds,* 517 Pa. 83, 534 A.2d 1050 (1987), an en banc panel of this Court analyzed for the first time the issue of whether government agencies and offices can be included within the definition of "victim." In *Mourar,* the defendant was ordered to make restitution to the Pennsylvania Bureau of Drug Control and the Chester County Detectives Office for the amount of drug purchases made by undercover agents.

Interpreting the prior decisions of other jurisdictions which had considered the issue, and applying the "injury to property" provision of 18 Pa.C.S. § 1106(a), the *Mourar* Court held "that a governmental agency can be a 'victim' as that term is used in 18 Pa.C.S. § 1106...." *Id.* at 599, 504 A.2d at 206.

In *Commonwealth v. Anderson,* 394 Pa.Super. 299, 575 A.2d 639 (1990), this Court reversed an Order directing the defendant to pay restitution to the volunteer program, "Crime Stoppers," for the costs it incurred using an informant to target defendant for the drug activity of which he was convicted. "While this court has stretched the definition of 'victim' in § 1106 to include the Commonwealth, we have no desire to further elongate the term to include organizations such as 'Crime Stoppers.'" *Id.* at 301, 575 A.2d at 640 (footnote omitted).

The *Anderson* Court went on to state:

Unlike the police, who have a statutory duty to protect the citizens of Pennsylvania and use the citizens' money to do so, "Crime Stoppers" is a *volunteer* organization of people and businesses who willingly give their money to pay people who have information about the criminal activity of others. While the efforts of "Crime Stoppers" have been helpful to the police, these efforts are not mandated by the citizens of Pennsylvania.

"Crime Stoppers" is a private organization acting as it believes good citizens should by helping gather information about criminal activity and by giving such information to the police. Money given to "Crime Stoppers" is not tax money.

It is money given freely by people who want to see those who have committed crimes put in jail. Since the funds used by "Crime Stoppers" is voluntarily donated and not public funds, the organization cannot be considered a victim for purposes of restitution.

*Id.* Thus, we find *Anderson* is distinguishable from *Mourar,* the fundamental holding of which remains intact.

Therefore, we find the trial court acted properly within its discretion in ordering appellant to make restitution to the Dauphin County Public Assistance Program, as the program may be considered a victim of appellant's actions under *Mourar.* Unlike "Crime Stoppers," the Public Assistance Program is not a volunteer program but, to the contrary, is mandated by law to provide, at public expense, medical services to indigent victims of criminal activity. To deny the right of restitution for the services it provided benefits only the criminal and twice penalizes society and the taxpayers.

■ Turning to appellant's second claim, however, we find the sentencing court failed to determine adequately appellant's ability to pay the restitution ordered.

As part of sentence, restitution is within the discretion of the sentencing court but must be supported by the record, and the court must determine the loss or damages resulting from the defendant's conduct, the amount of compensation the defendant can afford to pay and how such amount shall be paid. An award for restitution should not be speculative or excessive. There is no requirement the reasons for ordering restitution be set forth at sentencing.

*Commonwealth v. McLaughlin,* 393 Pa.Super. 277, 574 A.2d 610 (1990), *app. den.* 527 Pa. 616, 590 A.2d 756 (1991), *cert. denied* — U.S. ——, 112 S.Ct. 320, 116 L.Ed.2d 261 (1991).

In the case before us, the record at the sentencing hearing of appellant's ability to pay restitution consists entirely of the following:

THE COURT: Tell me something about your background.

THE DEFENDANT: I am laid off temporarily from Anger Fencing, Columbia, but my mother had a major back operation and she has no use of her left leg. She has a cleaning contract for Northwest Airlines in Middletown. She has a cleaning contract, it is a big one over at Sigma Food Service and me and my sister has been working every night so she doesn't lose her contract so she could keep that contract until she gets back on her feet which will probably be six to eight months. She has no use of her left leg right now.

(N.T., 11/19/92, p. 2.) The record also is devoid of any presentence investigation, which may have disclosed appellant's financial and/or employment status. Moreover, the sentencing court has failed to include an Opinion in the record before us, as required by Pa.R.A.P. 1925(a). The Commonwealth did introduce, however, evidence of the specific amount of restitution for which appellant was responsible.

After thoroughly reviewing the record, we conclude that the record amply supports an order of restitution. However, because the record does not disclose appellant's ability, either now or in the future, to make restitution, and the court did not determine in what manner the restitution should be made, we must vacate the order and remand for a new hearing.

*Mourar, supra* at 599, 504 A.2d at 206.

For the foregoing reasons, we vacate the portion of the judgment of sentence ordering restitution and remand for resentencing in accordance with this Opinion.[3]

Judgment of sentence vacated as to restitution only. The case is remanded for further hearing on appellant's ability to pay.

Jurisdiction relinquished.

---

3. Based on our decision, we need not address appellant's remaining claims, which are without merit.